**Awilda VILLARINI–GARCIA,**
**Plaintiff, Appellee,**

v.

**HOSPITAL DEL MAESTRO, et al., Defendants, Appellees.**

**Mario J. Tomasini, Dr., Defendant, Appellant.**

No. 96–2024.

United States Court of Appeals,
First Circuit.

Heard April 9, 1997.

Decided April 24, 1997.

Raul Davila–Rivera, Sabana Seca, PR and Alberto O. Jimenez, Hato Rey, PR with whom Bauza and Davila, Old San Juan, PR, were on briefs for defendant, appellant.

Kevin G. Little with whom Law Offices of David Efron, Rio Piedras, PR, was on brief for plaintiff, appellee.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOUDIN, Circuit Judge.

Dr. Mario J. Tomasini appeals from an adverse judgment against him for medical malpractice. Dr. Tomasini makes several claims of error, only one of which requires extended discussion. On that claim, which presents a difficult question concerning offsets to damage awards, we conclude that a deduction is required in this case to account for payment already received in settlement by the plaintiff, Awilda Villarini–Garcia, from the hospital for the same injury.

This case began with an operation performed by Dr. Tomasini in September 1986 at Hospital del Maestro in Puerto Rico. During the operation, Dr. Tomasini removed a birthmark or mole from Villarini's back, and a piece of muscle tissue. In her later complaint against Dr. Tomasini and the hospital, Villarini charged the doctor with negligence in removing the muscle tissue, causing her continuing pain and severely impairing her career as a concert pianist.

Villarini did not file her complaint against the doctor and hospital until June 1990, well after Puerto Rico's normal one year statute of limitations. 31 L.P.R.A. § 5298. Villarini argued that the statute was tolled under Puerto Rico's discovery rule until she acquired sufficient knowledge of the basis of her claim. The district court dismissed the case on summary judgment for failure to meet the statute of limitations, and Villarini appealed.

This court affirmed the dismissal as to three of Villarini's four claims of negligence but reversed as to one claim. *Villarini–Garcia v. Hospital Del Maestro*, 8 F.3d 81 (1st Cir.1993). On that last claim, we said that summary judgment was improper and that it was likely to be a jury question whether Villarini had exercised sufficient due diligence to give her the protection of the discovery rule. Following remand, the hospital settled with Villarini for $50,000, and the case proceeded to trial against Dr. Tomasini.

At the end of the trial, the jury awarded Villarini $100,000 for physical and mental damage and $500,000 for loss of earnings. Among other post-trial requests, Dr. Tomasini sought a deduction from the judgment of $50,000, representing the amount that the hospital had paid in settlement. The district court refused. This appeal followed. On appeal, Dr. Tomasini makes six claims of error, the last one being the denial of the deduction.

Four of the claims relate to sufficiency of the evidence: Dr. Tomasini says that the evidence was insufficient to allow Villarini to escape the statute of limitations, or to establish malpractice, or to show causation, or to support the amount awarded. A fifth claim is directed at testimony of an agent, who represents musicians, offered by Villarini to support her claimed loss of income; Dr. Tomasini says that the witness was not qualified and lacked an adequate basis for his testimony.

The challenges to the evidence—as to timeliness, negligence, causation, and damages—are legitimate issues; but having con-

sidered the evidence described in the briefs and set forth in the record, we think that the jury's verdict is not irrational on any of these issues and that the district court acted within its discretion in holding the expert to be qualified and his opinion adequately grounded. There is nothing about these fact-bound issues that warrants discussion in a published opinion.

The one issue that does require discussion is Dr. Tomasini's final argument that the $600,000 jury verdict should be reduced by $50,000 to reflect the amount Villarini received in settlement from his former co-defendant, the Hospital del Maestro. After the jury rendered its verdict, Dr. Tomasini filed a timely motion under Fed.R.Civ.P. 59(e) to amend the judgment to deduct the $50,000 settlement, and the district court denied the motion.

█ The court based its denial on the fact that the hospital was not "jointly" liable for the injury along with Dr. Tomasini; rather it was sued only on vicarious liability grounds. See 31 L.P.R.A. § 5142. Villarini presses the same objection on appeal. Implicit in the district court's ruling, and explicit in Villarini's argument, is the notion that there is no right to offset an earlier settlement made by a codefendant where the remaining co-defendant did not have a right of contribution against the settling co-defendant.[1] This presents a legal issue that we consider *de novo*, and conclude that the linkage of contribution and offset has no sound basis.

█ In almost all jurisdictions, settlement payments to the plaintiff from one of several joint tortfeasors—those who actively contributed to the same injury—reduce any judgment later secured against the nonsettling tortfeasor(s). *McDermott v. AmClyde*, 511 U.S. 202, 208, 114 S.Ct. 1461, 1465, 128 L.Ed.2d 148 (1994). The only debate is whether this reduction is to be made by a simple dollar-for-dollar offset or through a more complicated proportional liability formula. *Id.* at 208–17, 114 S.Ct. at 1465–66. *See* 6 Minzer *et al., Damages in Tort Actions* § 51.25[1] (1996).

█ Conversely, the usual rule is that a plaintiff's award will not be reduced for payments or benefits received from sources independent of those who wronged him. *See Restatement (Second) of Torts* § 920A(2) (1991); *Robertson v. White*, 81 F.3d 752, 758 (8th Cir.1996). This "collateral source" rule allows a plaintiff to receive payments such as charitable donations and payments from his own insurer without losing the ability to recover the full amount of his loss from the wrongdoer or wrongdoers.

A few courts have refused to offset payments made by a settling co-defendant who turned out later not to be liable as a joint tortfeasor with the nonsettling defendant. *E.g., Medical Center of Delaware v. Mullins*, 637 A.2d 6, 9–10 (Del.1994); *Collier v. Eagle–Picher Indus., Inc.*, 86 Md.App. 38, 585 A.2d 256, 265–67 (1991). The rationale of these holdings is that since the primarily liable defendant would have been obligated to pay the entire damage amount if the settling party had never been sued (or did not settle), the former should not reap the benefit of a fortuitous settlement by the latter. *Mullins*, 637 A.2d at 10.

The so-called "modern rule" expressed in the *Restatement (Second) of Torts* is very much to the contrary: it says that any payment "made in compensation of a claim for a harm" will reduce the liability of the remaining defendants, "whether or not the person making the payment is liable to the injured person." *Id.* § 885(3) and comment (f). *See also Restatement (Second) of Judgments* § 50(2) (1982). Many cases express the right of offset in the same unqualified terms as the *Restatement* (although not all happen to involve a settling codefendant who is vicariously liable).[2] So, too, does a lucid discussion in

---

1. For obvious reasons, under Puerto Rico law, as elsewhere, the active tortfeasor has no right of contribution against another whose liability to the victim is at best vicarious. *See FDIC v. Consolidated Mortgage*, 805 F.2d 14, 19 (1st Cir. 1986).

2. *See Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir.1941); *Lafayette v. County of Los Angeles*, 162 Cal.App.3d 547, 208 Cal.Rptr. 668, 672–73 (1984); *Harriss v. Elliott*, 207 Ill.App.3d 384, 152 Ill.Dec. 359, 565 N.E.2d 1041, 1044–45 (1991); *Mulinix v. Saydel Consol. School Dist.*, 376 N.W.2d 109, 110–11 (Iowa.Ct.App.1985);

the leading text, together with reasons for the *Restatement* rule. Keeton *et al., Prosser and Keeton on Torts* § 49, at 335–36 (5th ed.1984).

Puerto Rico law is controlling in this case and if the Puerto Rico courts had spoken to the precise question before us, their expressed view would be followed here. But no such ruling has been cited to us, and we can find none on our own. In such situations we may refer to common law rules. *Fireman's Fund Am. Ins. Co. v. Almacenes Miramar, Inc.*, 649 F.2d 21, 25 & n. 3 (1st Cir.1981); *Futurama Import Corp. v. Trans Caribbean Airways*, 104 D.P.R. 609, 4 O.T.S.C.P.R. 854, 861–62 (1976). Perhaps more importantly, we do know that Puerto Rico has disallowed double recoveries in a somewhat analogous context, expressing a general hostility to double recovery.

In a set of cases, the Supreme Court of Puerto Rico held that a plaintiff's tort recovery against a non-employer defendant must be reduced by any workers' compensation payments that the plaintiff had already received from, or on behalf of, his employer. *See Robles v. Superior Court*, 85 P.R.R. 640, 647 (1962); *Sanabria v. White Star Bus Line*, 50 P.R.R. 722, 725 (1936); *Machado v. The American R.R. Co. of P.R.*, 49 P.R.R. 823, 831–32 (1936). The *Robles* court said that these cases were "inspired on the principle that no one should or may unjustly enrich himself by receiving double compensation for the same accident." 85 P.R.R. at 647.

■ The collateral source rule, also followed in Puerto Rico, *Futurama*, 4 O.T.S.C.P.R. at 857–60, obviously does permit double recovery in certain situations; but it does so primarily where the extra benefit comes from insurance for which the plaintiff could easily have paid or from private generosity aimed at benefiting the victim rather than a wrongdoer. Payments from prospective co-defendants, whether vicariously or jointly liable, are clearly of a different char-

acter. *See Restatement (Second) of Judgments* § 50, comment (e) (1982).

Absent good reason—and none is suggested to us—courts are loath to promote double recoveries. *See generally Torres–Troche v. Municipality of Yauco*, 873 F.2d 499, 501–02 (1st Cir.1989). Even more troubling, without an offset the primary tortfeasor could easily be made to pay twice: ordinarily, a vicariously liable master who settled would have an independent claim for indemnification against the careless servant. *See* 31 L.P.R.A. § 5143; *Restatement (Second) of Agency* § 401 and comment (d) (1958).

Here, we are told that the hospital not only paid $50,000 to Villarini but purported to transfer its claim for indemnification to Villarini; and Villarini told us at oral argument that no further suit on the indemnification claim is now possible. Even so, no apparent justification is suggested here for double recovery by the victim. The jury assessed total injury at $600,000 and until Puerto Rico instructs otherwise, we see no reason why Villarini should enjoy compensation of $650,000 from the former co-defendants.

Accordingly, we remand the case to the district court, direct that the judgment be reduced by $50,000 representing the amount paid in settlement by the hospital, and otherwise affirm the judgment.

*It is so ordered.*

---

*Steger v. Egyud*, 219 Md. 331, 149 A.2d 762, 767–68 (1959); *Midway Nat'l Bank v. Estate of Bollmeier*, 504 N.W.2d 59, 65–66 (Minn.Ct.App. 1993); *Kirby v. New Mexico State Highway Dep't*, 97 N.M. 692, 643 P.2d 256, 259–260 (1982);

*Mead v. Bloom*, 94 A.D.2d 423, 464 N.Y.S.2d 904, 904–05 (N.Y.App.Div.1983); *Bellamy v. Prime*, 25 A.D.2d 923, 270 N.Y.S.2d 93, 94 (N.Y.App.Div.1966).